JAMES O'HAGAN AND WILLIAM O'HAGAN v. LULU H. CROSSMAN.

1. In a complaint under the Forcible Entry and Detainer act (*Rev*, *p.* 440, § 7), such certainty in description as apprises the defendant of the premises he is charged with entering and will guide in executing the writ of restitution, is all that is requisite.

2. The introduction in a complaint of the name of an improper person, when he did not sign the complaint or appear to have been in the possession of the premises, is not objectionable; no harm arose to the defendant by the mistake, and the name can be rejected as surplusage.

3. A complaint, stating the forcible entry as made on the 15th of February, omitting to name the year, is defective; but where the objection was not made until after the jury was returned into court and sworn, it will be regarded as waived.

4. There is nothing in the Forcible Entry and Detainer act requiring the justice to enter in his docket a copy of the complaint before the summons issues.

5. It is not ground for error that the justice endorsed the summons, which was issued in due form, on the back, as in the court for the trial of small causes. This endorsement formed no part of the summons and gave no character to the proceeding.

6. Where objection was made that the officer had returned the *venire* with the panel unsigned, it was proper for the justice to require him to add his official signature to the return before permitting the jurors to be sworn.

7. Although no express provision is found in the Forcible Entry and Detainer act, directing a *tales de circumstantibus* to meet the case of jurors failing to appear, or, appearing, are found to be disqualified, the grant of a jury trial necessarily implied the use of the means ordinarily employed to make the grant effective.

On *certiorari* in matter of forcible entry and detainer.

Argued at February Term, 1888, before Justices DEPUE, VAN SYCKEL and KNAPP.

For the plaintiffs in *certiorari*, *Samuel A. Patterson.*

For the defendant, *John H. Backes.*

The opinion of the court was delivered by

KNAPP, J.   The plaintiffs in *certiorari* were, on the complaint of the defendant, convicted of a forcible entry and detainer before a justice of the peace of Monmouth county; to reverse that judgment this writ of *certiorari* was sued out.

Eight special reasons are assigned as grounds for reversal.

The first is that the complaint does not describe with sufficient certainty the character of the premises in question.

The seventh section of the act concerning forcible entries and detainers (*Rev., p.* 440), requires a complaint to be filed with the justice, signed by the party grieved, specifying the lands, tenements or other possessions so forcibly entered upon and detained.

The complaint avers that defendants forcibly entered into " the messuage or storehouse and buildings of Lulu Crossman and Charles E. Crossman, and the lot of land whereon the same is located, being fifteen feet by thirty-two feet, situate in the township of Neptune, county of Monmouth and State of New Jersey, on the south side and edge of the south branch of Great pond, and a short distance westward of the west line of Central avenue, which runs from Asbury avenue in West Park, to said Great pond."

Premises described in a complaint as " the messuage or dwelling-house," was held to be too uncertain in *Applegate* v. *Applegate*, 1 *Harr.* 321.

But the description here is better and more definite than that in the case referred to.   It would, I am persuaded, be sufficient in ejectment, and by it no difficulty would arise in executing a writ of possession in that mode of procedure, or in this.   Great technical nicety is not required in the complaint, or in other proceeding in suits for forcible entry and detainer.   *Houghton* v. *Potter*, 3 *Zab.* 338; *S. C. in error*, 4 *Zab.* 735.

The premises are sufficiently described.

Such certainty in description as apprises the defendant of the premises which he is charged with entering, and will

guide in executing the writ of restitution, is all that is requisite.   This the complaint contains.

The second reason is that "the complaint alleges a joint interest in the premises and is a joint complaint, while the summons shows that one of the complainants is omitted from the same, and the suit is prosecuted by the said Lulu Crossman individually."

The record does not show a joint complaint.   The introduction of the name of Charles E. Crossman as a complainant with Lulu Crossman gives rise to this objection.   He did not sign the complaint, nor does he appear to have been in possession of the premises.   His name, therefore, as complaining, was improper.   But Lulu Crossman alone signed the complaint, and was, as appears in its statements, the only one whose possession was invaded, and in her name all the proceedings were conducted against these plaintiffs in *certiorari.*

The averment in the complaint that he was owner with the complainant did not of itself make him a necessary or perhaps a proper party.   It does not necessarily show him to be, in the language of the act, a "party grieved."   No possible harm arose to the plaintiffs by the mistake complained of, and no detriment can arise by rejecting this name as surplusage.

Third reason, "because the complaint does not state the time of the alleged forcible entry with any certainty."

The complaint states the forcible entry as made on "the fifteenth day of February," omitting to name the year.   This is not a compliance with the statute which requires specification of the time "when done."   And the fact that the complaint was *dated* on the 19th day of February, 1886, does not supply the omission.   But the defect was one that the party might waive objection to.   It doubtless indicated to the defendants below the transaction brought in litigation, and it is not pretended that it did not do so.

It was not a matter of jurisdictional or fundamental concern—a verdict in the suit; the objection not being raised would have cured it, and the party appearing in court and expressly waiving his objection would not afterward have been

heard upon it. A waiver may be implied from the conduct of the parties.

Reasons heard in the Supreme Court for reversal of a judgment in a like proceeding, in the case of *Townly* v. *Rutan, Spen.* 604, were refused consideration in the Court of Errors because objection had not been made in the trial court; a waiver of the error was implied, and there is no good reason why the maxim *consensus tollit errorem* should not have its full application in proceedings under this statute.

The inadvertent failure to state the year in setting out the time of the forcible entry was apparent upon the face of the paper on file when the summons was returned; presumably the defendants below knew of it. The cause was twice adjourned by the consent of the parties, and, in an agreement made between the attorneys of the respective parties, for the second adjournment it was stipulated that the original *venire* should be used by the sheriff to bring in the jury for the trial of the controversy, and it was not until after the jury was returned into court, and (as I read the record), the jurymen were sworn, that the objection was made.

In view of the agreement above referred to, which may well have been understood by the complainant as an express consent to try the cause on the merits, and after permitting the complainant to incur this additional expense of summoning a jury, and of bringing in her witnesses to support her case upon the merits, this objection came too late and ought not now to be heard. *Houghton* v. *Potter*, 3 *Zab.* 338; *S. C. on Error*, 4 *Zab.* 735; *Steward* v. *Sears*, 7 *Vroom* 173; *Butts* v. *French*, 13 *Vroom* 397.

The fourth is "because, at the time of the issuing of the precept and summons to the sheriff, the justice had not entered a copy of the proceedings in his docket."

The justice is required, by the seventeenth section of the act, to enter in his docket "true copies of the complaint, and of the summons and return; the time of issuing the *venire*, and how returned; the names of the jurors, their verdict and his judgment thereon, * * * and all the proceedings be-

fore him had touching the said complaint." There is nothing in the act which requires the complaint to be copied in the docket before the summons issues, or at any precise time. But the objection, if one of substance, is not supported by the record, for, by the certificate of the justice, the complaint was recorded immediately after the time of its filing, and that was the only *proceeding* taken before the summons and venire issued.

Fifth reason, " because the justice assumed jurisdiction of this suit in the court for the trial of small causes, instead of justice of the peace."

The only foundation for this assignment of error is that the summons, issued by the justice in due form, was endorsed on the back as in the court for the trial of small causes. This endorsement formed no part of the summons, and gave no character to the proceeding.

Under the sixth reason it is alleged as error that the justice, on the return of the *venire* by the officer with the panel unsigned, directed and required the deputy sheriff to add his official signature to the return after plaintiffs in error had interposed their objection that the return was unsigned. I discover no legal error in this.

The duty of the officer having the writ in his hands to execute was not performed until he had returned with the writ a panel of jurors certified to over his official signature. If these requisite forms were being overlooked by him, it was not a fault in the justice to require of him the performance of his duty before permitting the jurors to be sworn in the cause.

Seventh, " because the justice allowed jurymen to be called from those persons casually sitting in the court-room other than those returned by the officer."

This reason is designed to question the right under this statute to call in other jurors to try the cause than those first summoned who fail to appear, or, appearing, are found disqualified to serve. The plaintiffs must, I think, fail in this reason. It is true that no express provision is found in the

act directing a *tales de circumstantibus* to meet such a case; but a contingency so likely to arise as the absence of jurors first summoned must have been contemplated by the legislature, and that it was so appears by the terms of the act for voluntary absence of a juror who has been summoned, is made punishable by the justice.   The act gives a trial, by a jury of twelve men, such as are qualified to serve in the Court of General Quarter Sessions of the Pleas.   From the earliest history we have of jury trial, we find the use of *tales* to fill vacancies in the panel.   And early cases show us that in special jury summons for the particular case the *tales* was used to supply the place of absentees.   *Sparrow* v. *Turner*, 2 *Wils.* 366 ; *Rex* v. *Perry*, 5 *T. R.* 453.

When the act respecting forcible entry and detainer was passed, a method of filling vacancies in the panel was an inseparable belonging of the jury system, and the grant of a jury trial necessarily implied the use of the means ordinarily employed to make the grant effectual.   For the general principle is that the express grant of a right or power implies all that is necessary to the enjoyment and exercise of the grant.

But upon narrower grounds the plaintiffs' objection must fail.   The mandate of the writ which the statute awards is to the sheriff to summon and return twelve good and lawful men to try the cause.   The form of this precept, and the summoning officer's power under it, should not be regarded as spent and executed until he has brought into court the requisite number of men, competent and accepted, to try the cause; until this be done, the purpose of the statutory writ is not accomplished.   Again, the case of *Lyon* v. *Tharp*, *Penn.* 465, and *Russell* v. *McClain*, *Id.* 650, have not been overlooked.   The reports of these cases are meagre ; but, if correct, they exhibit a severe rigidity in practice which cannot be harmonized with that more liberal spirit now characterizing procedure in our courts, which refuses to sacrifice substantial justice to mere useless form.

The plaintiffs cannot succeed in this objection upon grounds which they have assumed in this cause.   Mention of the fact

has not been made until now, that the change in the panel as first summoned arose from the plaintiffs in error claiming, and being unlawfully accorded to them, the right of three peremptory challenges, thereby making necessary the action of which they now complain, and upon which they assert was terminated the power of the court further to move in the cause. At the time when these challenges were made the panel was not, as already appears, signed by the deputy sheriff. We have yielded to the position of counsel that the return of the *venire* was not perfect until it had the official signature of the deputy. This signature the return afterward received, but when it was so perfected it bore the names, not of the challenged, but of the substituted jurors.

This change the officer had the undoubted right to make at any time before the writ was lawfully returned (*Boyles* v. *McEowen, Penn.* 677), and so he may, after actual return, amend it by inserting the name of an omitted juror. *Berry* v. *Williams*, 1 *Zab.* 423.

The docket entry, therefore, giving the three names not originally in the list, as of those jurors returned by the officer and sworn in the cause, was strictly true.

This entry of the justice was a proper entry.

The cases of *Prickett* v. *Prickett*, 7 *Halst.* 214, and *Applegate* v. *Applegate*, 1 *Harr.* 321, holding that the *venire* and its return must be copied in the docket of the justice, were decided before the revision of 1847, when the law in this particular was changed. All that is required now is a record of the time when the same issued, and *how returned*.

The last objection is that "no actual possession by the complainant at the time of the alleged entry was shown."

This is one of substance, but the return of the justice certifies enough of the evidence upon this point to show that the fact is otherwise than as stated in the reason.

The severe technicality which the foregoing objections suggest have some countenance in the very early adjudications under this statute, but as one and another impediment has arisen in the way of the execution of this enactment, the legis-

lature has been prompt to sweep it away, thus exhibiting the view of the law-maker to be that disfavor should not attend upon the enforcement of this law.

The proceeding set up by it is neither criminal nor penal. The law gives a summary redress for a serious private injury springing from a wrong which, at the common law, was the subject of indictment, and the statute should not, as a remedial act, be hampered by useless and vexatious niceties in interpretation, but should, as justice Elmer says, in *Houghton* v. *Potter*, *supra*, be interpreted like other remedial statutes—on principles of reason and common sense.

If abuses of the law are possible, or to be feared, it is enough that the court diligently guard against these.

This judgment should be affirmed, with costs.